United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NOR THERN DISTRICT OF CALIFORNIA

ROBERT TUCK,

Plaintiff(s),

v.

WELLS FARGO HOME MORTGAGE,

Defendant(s).
_______________________________________/

No. C 12-04002 DMR

**ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING SCHEDULE FOR PRELIMINARY INJUNCTION HEARING**

Before the court is Plaintiffs Robert Tuck and Patricia Berkowitz' *ex parte* application for a temporary restraining order and an order to show cause why a preliminary injunction should not issue to prevent the sale upon foreclosure of their home in Martinez, California, scheduled for August 27, 2012. [Docket No. 20.] Having considered the papers submitted, the court hereby GRANTS Plaintiffs' motion.

## I. Background

Plaintiffs Robert Tuck and Patricia Berkowitz bring this action against Defendants Wells Fargo Home Mortgage and NDEX West LLC, asserting four causes of action. Specifically, Plaintiffs assert the following four causes of action: 1) fraud; 2) intentional infliction of emotional distress; 3) violation of California Business and Professions Code section 17200 *et seq*.; and 4) elder financial abuse.

In or around 2007, Plaintiffs Robert Tuck and Patricia Berkowitz refinanced their home loan with World Savings Bank, FSB ("World Savings Bank"). (Compl. ¶¶ 6, 7.) World Savings Bank later became Wachovia Mortgage. (Compl. ¶ 8.) Following the refinance of their home loan, Plaintiffs' monthly payment was $1,967.79. (Compl. ¶ 9.) Plaintiffs made all payments on the loan in a timely fashion. (Compl. ¶ 11) Each year, their minimum monthly payment increased, but Plaintiffs were able to maintain their payments. (Compl. ¶ 12.)

Plaintiff Tuck is retired and Plaintiff Berkowitz is self-employed. Due to the economic recession, Plaintiffs' income declined sharply, and in January 2010, Plaintiffs made a final loan payment of $2,719.76. Plaintiffs then applied for a loan modification through Wachovia. (Compl. ¶¶ 13, 14.) As part of the loan modification process, Plaintiffs submitted financial information to Wachovia which they estimate covered the time period of January 2010 through March 2010. During that time period, Plaintiff Berkowitz's family law practice received a lump sum payment of $18,000 from a client, which was an unusual event in the course of her practice. Plaintiffs informed Wachovia that the $18,000 payment should be treated as an unusual, one-time payment that did not accurately reflect the financial profile of Plaintiff Berkowitz's law practice. (Compl. ¶ 14.)

In July 2010, Plaintiffs received a phone call from Wachovia informing them that they had received a loan modification with a new monthly payment of $3,766.13. (Compl. ¶ 15.) Contrary to Plaintiffs' advice, Wachovia had included the $18,000 payment in their calculation of Plaintiffs' new monthly loan payment. Plaintiffs were shocked because they had sought a loan modification based upon their inability to afford the $2,719.76 monthly payment, and instead of lowering their payment, Wachovia had raised it by over $1,000. When Plaintiffs informed Wachovia's representative that they could not afford the increased payment, the representative informed them that "there was no other recourse available, that it was a 'take it or leave it' situation, and that if Plaintiffs did not pay their mortgage, Wachovia would foreclose on their home." (Compl. ¶ 15.) Plaintiffs informed Wachovia that if their monthly payment was set at the new amount, they would eventually default. Wachovia's representative told Plaintiffs that if they did not accept the loan modification offered, "they would never get any other form of assistance." (Compl. ¶ 16.) Fearing the loss of their home of over thirty years, Plaintiffs made the monthly payment of $3,766.13.

(Compl. ¶ 17.) Plaintiffs Tuck and Berkowitz, then aged 82 and 65, respectively, made two payments before the monthly payment was further increased to $3,799.84. (Compl. ¶¶ 17, 18.) The payments continued to increase, reaching a high of $3,970.32 per month. Plaintiffs made their last loan payment on September 27, 2011. (Compl. ¶ 18.)

Around December 1, 2011, Plaintiffs received notice that Wells Fargo Home Mortgage had taken over Wachovia Mortgage. (Compl. ¶ 19.) Around December 9, 2011, Plaintiffs received a Notice of Default, and in March 2012, Plaintiffs received a Notice of Trustee's Sale. (Compl. ¶¶ 20, 21.)

Plaintiffs filed a complaint for damages and equitable relief in the Superior Court for Contra Costa County on March 29, 2012, alleging ten causes of action against Defendant Wells Fargo Home Mortgage ("Wells Fargo"). Wells Fargo removed the action on April 11, 2012. On July 13, 2012, the court dismissed six of Plaintiffs' claims with prejudice and dismissed Plaintiffs' remaining claims without prejudice. [Docket No. 24, Case No. 12-cv-01796-DMR.] Plaintiffs filed the current complaint in the Superior Court for Contra Costa County on July 26, 2012, and Wells Fargo removed the action on July 30, 2012. A foreclosure sale of the property is scheduled for August 27, 2012 at 10:00 a.m. (Pls.' Mot. 2.)

## II. Applicable Legal Standard

An application for preliminary relief requires Plaintiffs to "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 21-22 (2008). In the Ninth Circuit, courts evaluate these factors on a sliding scale; a court may issue a preliminary injunction on less than a likelihood of success on the merits, if Plaintiffs demonstrate "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

## III. Discussion

United States District Court
For the Northern District of California

**A. Likelihood of Success on the Merits**

To prevail, Plaintiffs must first show that they are likely to succeed on the merits of their claims. Winter, 555 U.S. at 20. In this analysis, the allegations of the complaint are to be taken as true. *Hughes v. Wells Fargo Bank, N.A.*, No. CV 09–2496–PHX–MHM, 2009 WL 5174987, at *1 (D.Ariz. Dec. 18, 2009).

**1. Fraud**

In California, the elements of fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) (quotation marks omitted).

Plaintiffs allege that Defendants falsely represented to Plaintiffs that they had no alternatives to foreclosure other than acceptance of the terms of the modification, and concealed from and/or failed to disclose to Plaintiffs the nature of alternatives they did have under the law, such as a refinance of the loan. Plaintiffs relied on Defendants' statements that they had to either accept the modification and the over $1,000 increase in their monthly payment or face foreclosure, and elected to accept the modification. The court determines that Plaintiffs have raised serious questions about the merits of their fraud claim.

**2. Financial Elder Abuse**

California law recognizes claims for financial elder abuse as follows: "(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following: (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both . . . " Cal. Welf. & Inst. Code § 15610.30(a). "[A] person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement." Cal. Welf. & Inst. Code § 15610.30(c).

Plaintiffs were over 65 years old at the time Defendants allegedly represented to them that they had to accept the loan modification or face foreclosure. Plaintiffs have raised serious questions

United States District Court
For the Northern District of California

about the merits of their financial elder abuse claim.[1] *See Zimmer v. Nawabi*, 566 F. Supp. 2d 1025, 1033-34 (E.D. Cal. 2008) (recognizing elder abuse claims against mortgage brokers for making false statements about refinancing terms).

**B. Irreparable Harm and Balance of Hardships**

As to the next two factors, i.e., irreparable harm and balance of hardships, the court finds that they also weigh in favor of Plaintiffs. As many courts have recognized, "losing one's home though foreclosure constitutes irreparable harm." *Osorio v. Wells Fargo Bank*, No. C 12-02645 RS, 2012 WL 1900335, at *3 (N.D. Cal. May 24, 2012). Second, the balance of hardships tips sharply in Plaintiffs' favor. At most, Defendants face the prospect of monetary loss. That "does not outweigh the harm [Plaintiffs] would suffer if [they] lost [their] home, especially considering that any security [D]efendants have in [Plaintiffs'] property will still remain." *Id*. at *3. A TRO would only subject Defendants to "a temporary delay in earning income from their investment." *Id*. (citing *Naderski v. Wells Fargo Bank, N.A.*, No. CV 11-1783 CAS CWX, 2011 WL 1627161, at *2 (C.D. Cal. Apr. 25, 2011)) (quotation marks omitted).

**C. Public Interest**

Finally, the public interest also weighs in favor of a preliminary injunction, precisely because of the serious questions raised which make the foreclosure sale questionable.

**D. Issuance of TRO and Bond Requirement**

Because the above factors have been satisfied, the court shall issue a TRO. Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Because Defendants have a secured interest in the property and will be permitted to proceed with foreclosure if the court determines that Plaintiffs do not sufficiently state a claim for relief, the court does not require Plaintiffs to post a bond at this time.

**IV. Conclusion**

---

[1] As Plaintiffs are only seeking a TRO barring the foreclosure from proceeding, the court need not evaluate each individual cause of action.

United States District Court
For the Northern District of California

For the reasons set forth above, Plaintiffs' motion for a TRO is GRANTED. The TRO bars Defendants, as well as their agents, assigns, and those acting in concert with Defendants, from selling, foreclosing, or otherwise alienating the real property located at 6349 Greenridge Court, Martinez, California 94553 (Assessor's Parcel Number 164-391-017-5). The TRO shall expire on September 7, 2012.

Defendants are hereby ordered to show cause why a preliminary injunction should not be ordered enjoining Defendants, as well as their agents, assigns, and those acting in concert with Defendants, from selling, foreclosing, or otherwise alienating the real property located at 6349 Greenridge Court, Martinez, California 94553 (Assessor's Parcel Number 164-391-017-5).

Defendants' response to this order to show cause must be filed and served by **August 30, 2012 at 10:00 a.m.**

A hearing on the order to show cause shall be held on **September 7, 2012 at 10:30 a.m.** at the U.S. District Court, 1301 Clay Street, Oakland, California 94612. For courtroom number and floor information, please check the Court's on-line calendar at http://www.cand.uscourts.gov (click "Calendars - Judges' Weekly Calendars" link, then select Judge Ryu's calendar) or call Judge Ryu's Courtroom Deputy, Ivy Garcia, at (510) 637-3639, one week prior to the scheduled hearing.

IT IS SO ORDERED.

Dated: August 24, 2012




DONNA M. RYU
United States Magistrate Judge