UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TUCK, *et al.*, | No. C 12-04002 DMR |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS AND DENYING REQUEST FOR PRELIMINARY INJUNCTION** |
| v. | |
| WELLS FARGO HOME MORTGAGE, *et al.*, | |
| Defendants. | |

Before the court is Defendant Wells Fargo Bank, N.A.'s motion to dismiss the Complaint [Docket No. 8] and Plaintiffs Robert Tuck and Patricia Berkowitz's request for a preliminary injunction. The court held a hearing on November 29, 2012 at which the parties were given an opportunity to present oral argument. For the reasons below, Defendant's motion to dismiss is GRANTED and Plaintiffs' Complaint is dismissed with prejudice. Plaintiffs' request for a preliminary injunction is DENIED.

**I. Background & Procedural History**

This is the second action that Plaintiffs Robert Tuck and Patricia Berkowitz have filed against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and NDeX West LLC[1] ("NDeX"). Plaintiffs make the following allegations in their Complaint, all of which are taken as true solely for purposes of this motion.[2] In or around 2007, Plaintiffs Robert Tuck and Patricia Berkowitz refinanced their home loan and executed a promissory note for $536,000 in favor of World Savings Bank, FSB ("World Savings Bank"), which was secured by a deed of trust on real property located at 6349 Greenridge Court, Martinez, California ("the property"). (Compl. ¶¶ 6, 7; Def.'s Req. for Judicial Notice in Supp. of Mot. to Dismiss[3] ("RJN"), Ex. A.) In November 2007, World Savings Bank became Wachovia Mortgage, FSB ("Wachovia"), and in November 2009, Wachovia merged into Wells Fargo Bank, N.A. (Compl. ¶¶ 8, 19; RJN Exs. C, D.[4]) Following the refinance of their home loan, Plaintiffs' monthly payment was $1,967.79. (Compl. ¶ 9.) Plaintiffs made all payments on the loan in a timely fashion. (Compl. ¶ 11) Each year, their minimum monthly payment increased, but Plaintiffs were able to maintain their payments. (Compl. ¶ 12.)

Plaintiff Tuck is retired and Plaintiff Berkowitz is self-employed. Due to the economic recession, Plaintiffs' income declined sharply, and in January 2010, Plaintiffs made a final loan payment of $2,719.76. Plaintiffs then applied for a loan modification through Wachovia. (Compl.

---

[1] On August 14, 2012, Plaintiffs and NDeX submitted a stipulation to the non-monetary status of NDeX: "Defendant NDeX West, LLC had no involvement in the origination or servicing of the subject mortgage loan and has been joined as a defendant based upon its limited role in handling a non-judicial foreclosure as agent for the mortgage lender(s) and/or as successor trustee under the subject Deed of Trust and solely for the purpose of having all necessary parties before the Court." [Docket No. 11.] The parties agreed that based on its limited role, NDeX will not be liable to Plaintiffs for any monetary damages, attorneys' fees or costs of suit.

[2] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[3] The court grants Defendant Wells Fargo's request for judicial notice of Exhibits A and B, the deed of trust and notice of default recorded in connection with Plaintiffs' loan. They are true and correct copies of official public records of the Alameda County Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

[4] The court also grants Wells Fargo's request for judicial notice of Exhibits C and D, which establish the history of Wachovia Mortgage, FSB. The court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

¶¶ 13, 14.) As part of the loan modification process, Plaintiffs submitted financial information to Wachovia which they estimate covered the time period of January 2010 through March 2010. During that time period, Plaintiff Berkowitz's family law practice received a lump sum payment of $18,000 from a client, which was an unusual event in the course of her practice. Plaintiffs informed Wachovia that the $18,000 payment should be treated as an unusual, one-time payment that did not accurately reflect the financial profile of Berkowitz's law practice. (Compl. ¶ 14.)

In July 2010, Plaintiffs received a phone call from Wachovia informing them that they had received a loan modification with a new monthly payment of $3,766.13. (Compl. ¶ 15.) Contrary to Plaintiffs' advice, Wachovia had included the $18,000 payment in their calculation of Plaintiffs' new monthly loan payment. Plaintiffs were shocked because they had sought a loan modification based upon their inability to afford the $2,719.76 monthly payment, and instead of lowering their payment, Wachovia had raised it by over $1,000. When Plaintiffs informed Wachovia's representative that they could not afford the increased payment, the representative informed them that "there was no other recourse available, that it was a 'take it or leave it' situation, and that if Plaintiffs did not pay their mortgage, Wachovia would foreclose on their home." (Compl. ¶ 15.) Plaintiffs informed Wachovia that if their monthly payment was set at the new amount, they would eventually default. Wachovia's representative told Plaintiffs that if they did not accept the loan modification offered, "they would never get any other form of assistance." (Compl. ¶ 16.) Fearing the loss of their home of over thirty years, Plaintiffs made the monthly payment of $3,766.13. (Compl. ¶ 17.) Plaintiffs Tuck and Berkowitz, then aged 82 and 65, respectively, made two payments before the monthly payment was further increased to $3,799.84. (Compl. ¶¶ 17, 18.) The payments continued to increase, reaching a high of $3,970.32 per month. Plaintiffs made their last loan payment on September 27, 2011. (Compl. ¶ 18.)

Around December 9, 2011, Plaintiffs received a Notice of Default, which was recorded the same day. (Compl. ¶ 20; RJN Ex. B.) Prior to that date, Plaintiffs did not receive a phone call "discussing their financial situation, outlining their alternatives to foreclosure, or informing them of their right to a subsequent meeting with their lender." (Compl. ¶ 20.) The Notice of Default included a declaration by Jim Toney, an officer of Wells Fargo, stating that Wells Fargo "has

contacted the borrower as set forth in California Civil Code Section 2923.5(a)(2)," (RJN Ex. B), but Plaintiffs allege that they had never spoken to Jim Toney or heard of him before receiving the Notice of Default. (Compl. ¶ 20.) In March 2012, Plaintiffs received a Notice of Trustee's Sale. (Compl. ¶ 21.)

On March 29, 2012, Plaintiffs filed a complaint (the "original complaint") in Contra Costa Superior Court alleging ten causes of action against Defendants. Wells Fargo removed the action on April 11, 2012 and filed a motion to dismiss on April 20, 2012.[5] On July 12, 2012, this court held a hearing on the motion. Plaintiffs did not appear at the hearing and subsequently filed a notice of dismissal of the entire action without prejudice without seeking a court order. Because NDeX had already answered the complaint and Plaintiffs could not voluntarily dismiss the action by filing a notice of dismissal (*see* Fed. R. Civ. P. 41(a)(1)(A)(i)), the court construed the notice of dismissal as a request for an order of dismissal "on terms that the court consider[ed] proper" pursuant to Federal Rule of Civil Procedure 41(a)(2). On July 13, 2012, the court dismissed with prejudice six of Plaintiffs' claims as preempted by the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 *et seq.*, including a claim for violation of California Civil Code section 2923.5, which sets forth certain borrower contact requirements prior to the recording of a notice of default. The court dismissed Plaintiffs' remaining claims for intentional infliction of emotional distress; fraud, unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code section 17200 *et seq.*; and elder financial abuse in violation of California Welfare and Institutions Code section 15610 *et seq.* without prejudice, on the grounds that they were not necessarily preempted by HOLA. *Tuck v. Wells Fargo Home Mortgage*, No. C-12-01796 DMR, 2012 WL 2906738, at *5-6 (N.D. Cal. July 13, 2012).

On July 26, 2012, Plaintiffs filed the present complaint against Defendants in Contra Costa Superior Court, alleging the four causes of action that this court had previously dismissed without prejudice. On July 30, 2012, Wells Fargo removed the action and filed this motion to dismiss on

---

[5] Plaintiffs and Wells Fargo are represented by the same counsel as in the prior case before this court.

4

August 14, 2012. On August 17, 2012, this court issued an order relating this case to the earlier case, *Tuck et al. v. Wells Fargo Home Mortgage, et al.*, No. 12-01796 DMR. [Docket No. 27.]

On August 23, 2012, Plaintiffs filed an *ex parte* application for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue to prevent the sale upon foreclosure of their home, which was scheduled for August 27, 2012. [Docket No. 20.] The court granted the temporary restraining order on August 24, 2012, ordered Defendants to show cause why a preliminary injunction should not issue, and set a hearing on the order to show cause for September 7, 2012. [Docket No. 27.] Upon Wells Fargo's unopposed request, the court continued the hearing on the order to show cause to October 11, 2012, to be held concurrently with Wells Fargo's motion to dismiss.[6] [Docket No. 30.] The parties subsequently stipulated to continue the hearing on the order to show cause and Wells Fargo's motion to dismiss to November 29, 2012. [Docket No. 36.]

## II. Motion to Dismiss

### A. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks

---

[6] The TRO expired on September 7, 2012. [Docket No. 27.] In connection with its request to continue the hearing on the order to show cause, Wells Fargo represented that it had agreed to continue the foreclosure sale to a day after October 11, 2012. [Docket No. 28.] On October 9, 2012, Plaintiffs filed a second *ex parte* application for a TRO, seeking to extend the original TRO issued by this court on August 24, 2012. [Docket No. 38.] As the original TRO had expired and there was accordingly no TRO in place to extend, the court denied that application on October 10, 2012. [Docket No. 39.] Later that day, Plaintiffs filed a third *ex parte* application for a TRO, in which they indicated that the ownership of Plaintiffs' loan had been transferred and thus Wells Fargo was unable to continue the date of the foreclosure sale, which was scheduled for October 12, 2012. [Docket No. 40.] The court denied the third application on the grounds that the new owner and servicer of the loan were not parties to this action and Plaintiffs had not stated any causes of action against them. [Docket No. 42.]

omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

**B.     Discussion**

Plaintiffs' complaint contains four causes of action: 1) fraud within the meaning of California Civil Code section 3294(c)(3); 2) intentional infliction of emotional distress; 3) unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code section 17200 *et seq*. (the Unfair Competition Law, "UCL"); and 4) elder financial abuse in violation of California Welfare and Institutions Code section 15610 *et seq*. Wells Fargo moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds of preemption and failure to state a claim upon which relief can be granted, and Rule 9(b) for failure to allege fraud with particularity.

As in their motion to dismiss Plaintiffs' original complaint, Wells Fargo contends that all of Plaintiffs' claims attack the lending activities of federally chartered loan associations and are therefore preempted by the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 *et seq*. HOLA provides the Office of Thrift Supervision ("OTS") with broad authority to issue regulations governing federally chartered savings associations. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001,

1004-05 (9th Cir. 2008). Because Wells Fargo's predecessor, World Savings Bank, was a federally chartered savings bank regulated by the OTS under HOLA at the time of Plaintiffs' loan origination, HOLA governs the preemption analysis here. *See Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011) (not reported in F. Supp. 2d) ("'Where a national association, such as Defendant, acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA.'") (quoting *Guerrero v. Wells Fargo Bank, N.A.*, No. CV 10-5095-VBF (AJWx), 2010 WL 8971769, at *3 (C.D. Cal. Sept. 14, 2010)(not reported in F. Supp. 2d)).

A preemption analysis under HOLA first requires a court to determine whether the law at issue is identified in 12 C.F.R. § 560.2(b), which provides a nonexclusive list of the types of state laws preempted by HOLA. *See Silvas*, 514 F.3d at 1005. Among the laws specifically preempted by HOLA are those affecting "terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan;" "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;" and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(4), (9), (10).

If the state law at issue falls into one of the enumerated categories, then it is preempted by HOLA. *Silvas*, 514 F.3d at 1005. If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only "if the law can clearly be shown to fit within the confines of paragraph (c) [of section 560.2]." *Id.* Section 560.2(c) excepts from preemption "[s]tate laws . . . that . . . only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)." 12 C.F.R. § 560.2(c).

In its July 13, 2012 Order of Dismissal regarding the original complaint, this court dismissed six of Plaintiffs' claims, finding the claims would impose a duty on lenders in the lending process as to disclosures, challenge the terms of credit, or challenge the "processing, origination, servicing, sale or purchase" of a mortgage, and thus were preempted by HOLA. *Tuck*, 2012 WL 2906738, at *4-5

1 (citing 12 C.F.R. § 560.2(b)(10), (4), (9)). The court recognized that "even claims premised upon
2 state laws of general applicability, such as fraud or deceit, may be preempted if the state law, as
3 applied, is a type of law contemplated by 12 C.F.R. § 560.2(b)," such as allegations of inadequate
4 disclosures of fees, interest rates, or other loan terms, or inadequate notice of various rights and
5 procedures during the foreclosure process. *Tuck*, 2012 WL 2906738, at \*4 (citing *DeLeon v. Wells
6 Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2011 WL 311376, \*6 (N.D. Cal. Jan. 28, 2011) (not
7 reported in F. Supp. 2d)). However, the court also noted that courts typically have found that claims
8 relying on the general duty not to misrepresent material facts, when application of the law does not
9 regulate lending activity, are not preempted. *Id*.

10 As previously noted, Plaintiffs did not appear at the earlier hearing. The earlier order was
11 thus based on what the Plaintiffs may have been trying to allege, even if their original complaint was
12 not entirely clear, and counsel was not present to provide clarification. The court ultimately
13 concluded that Plaintiffs' causes of action for intentional infliction of emotional distress, fraud, and
14 elder financial abuse should not be dismissed with prejudice at that time because they "[did] not
15 necessarily challenge improprieties in the foreclosure process or otherwise challenge loan
16 disclosures, interest rates or [some] other factor that directly affects lending." *Tuck*, 2012 WL
17 2906738, at \*5. Instead, it was possible that upon further clarification of their pleadings, Plaintiffs'
18 claims could arise from a more "general duty not to misrepresent material facts." For that reason,
19 the court refrained from dismissing the remaining four claims with prejudice, because it was not
20 clear that they were preempted by HOLA. *Id.* (citing *Ahmed v. Wells Fargo Bank & Co.*, No. No. C
21 11-0436-SI, 2011 WL 1751415, at \*4 (N.D. Cal. May 9, 2011) (not reported in F. Supp. 2d)). With
22 respect to Plaintiffs' UCL claim, the court found the claim preempted by HOLA only to the extent
23 that Plaintiffs' allegations related to alleged deficiencies in the foreclosure process. *Tuck*, 2012 WL
24 2906738, at \*6.

25 Now that the substance of Plaintiffs' claims is squarely before the court, the court concludes
26 that the claims are in fact preempted by HOLA. Plaintiffs' fraud, elder financial abuse, intentional
27 infliction of emotional distress and unfair business practices claims are all based upon the following
28 contentions: (1) that Wells Fargo knew that the elderly Plaintiffs could not afford the loan

modification; (2) that the terms of the loan modification were based upon a knowing miscalculation of Plaintiffs' income; and (3) that Wells Fargo nevertheless "forced" Plaintiffs to accept the loan modification by falsely representing that Plaintiffs had no alternatives other than foreclosure.[7] To the extent that any claim is based upon the allegation that Wells Fargo knowingly miscalculated Plaintiffs' income in determining the terms of their loan modification, such claim is clearly preempted by HOLA because it challenges the "terms of credit, including . . . payments due," as well as the "processing, origination, servicing, sale or purchase" of a mortgage. *See* 12 C.F.R. § 560.2(b)(4), (10); *see also Loder v. World Savings Bank*, No. C11-00053 TEH, 2011 WL 1884733, at *6 (N.D. Cal. May 18, 2011) (not reported in F. Supp. 2d) (dismissing as preempted claim based upon allegation that bank placed plaintiffs in a loan they could not afford because it "attack[ed] the terms of credit, including . . . payments due") (internal quotation marks omitted); *Remo v. Wachovia Mortgage*, No. C11-02935 TEH, 2011 WL 3448234, at *4-5 (N.D. Cal. Aug. 5, 2011) (not reported in F. Supp. 2d) (dismissing as preempted claim based upon allegation that bank encouraged plaintiff to enter "into a risky loan that she could not afford" because plaintiff "clearly challenge[d] the means by which her loan originated.").

The other basis for Plaintiffs' claims is their assertion that Wells Fargo fraudulently misrepresented to Plaintiffs that they either had to accept the loan modification, or go through foreclosure. Fraud claims alleging affirmative, material misrepresentations are not subject to HOLA preemption, while those alleging inadequate disclosure of fees, interest rates, or other loan terms that directly affect lending are preempted. *DeLeon*, 2011 WL 311376, at *6; *Sato v. Wachovia Mortgage, FSB*, No. 5:11–cv–00810 EJD (PSG), 2011 WL 2784567, at *8 (N.D. Cal. July 13, 2011); *see also Rumbaua v. Wells Fargo Bank, N.A.*, No. 11-1998 SC, 2011 WL 3740828, at *7 (N.D. Cal. Aug. 25, 2011) (not reported in F. Supp. 2d) (courts have interpreted "*Silvas* to not

---

[7] With respect to Plaintiffs' UCL claim, Plaintiffs again allege that the claim is based upon deficiencies in the foreclosure process, even though the court previously dismissed the claim as preempted on that basis. (*See* Compl. ¶ 4 ("Defendants . . . had no right to file a Notice of Default without complete compliance with non-judicial foreclosure statutes")). However, in their opposition to the motion to dismiss, Plaintiffs argue that the claim is based upon Wells Fargo's "committing fraud, intentionally inflicting emotional distress, and committing financial elder abuse." (Pls.' Opp'n 5.) Thus, it appears that this claim is based upon the same set of allegations as the other claims.

9

preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings, but only those that impose new requirements on the lender . . . claims [premised on fraud or promises made by a bank] are not necessarily preempted, because the only 'requirement' they impose on federal savings banks is that they be held responsible for the statements they make to their borrowers.").

In cases where courts have found that claims of fraud or misrepresentation are not preempted, the claims are based on allegations of affirmative, material misrepresentations of fact to the borrower.  For example, courts have found HOLA does not preempt claims based upon a bank's alleged false representations that it would complete a loan modification and that no foreclosure sale would take place while the modification process was pending.  *See, e.g., DeLeon*, 2011 WL 311376, at *6; *Ahmed*, 2011 WL 1751415, at *4; *Boggs v. Wells Fargo Bank, N.A.*, No. C-11-2346 SBA, 2011 WL 5038432, at *5 (N.D. Cal. Oc. 24, 2011) (not reported in F. Supp. 2d).  Courts generally conclude that such claims do not "arise from a misrepresentation regarding loan disclosures, interest rates, or some other loan parameter that directly affects lending," and so do not necessarily regulate lending activity, *Ahmed*, 2011 WL 1751415, at *4, nor do they impose new requirements on the lender, *see Rumbaua* 2011 WL 3740828, at *7.  Similarly, a court refused to find a fraud claim preempted where the claim was based on the allegation that the bank knew that the borrowers sought a fixed rate mortgage, but nevertheless signed them up for a "pick-a-payment" variable loan.  The court reasoned that this constituted a misrepresentation of the product the borrowers were being sold, not a flawed disclosure of the product's terms and conditions.  *Hague v. Wells Fargo Bank, N.A.*, No. C11-02366 TEH, 2012 WL 1029668, at *5 (N.D. Cal. Mar. 26, 2012).

Upon close examination, the allegation that Wells Fargo fraudulently misrepresented to Plaintiffs that they had to accept the loan modification or else face foreclosure falls within the scope of HOLA preemption.  At oral argument Plaintiffs' counsel conceded that Wells Fargo was not acting as a fiduciary in the loan modification process and owed no duty to Plaintiffs.  *See Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991) (holding that under California law, financial institution owes no duty to borrowers when its involvement in a loan transaction does not exceed the scope of its role as a lender of money); *see also Oaks Mgmt. Corp. v. Superior Court*,

145 Cal. App. 4th 453, 466 (2006) ("a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender."). Instead, Plaintiffs' counsel asserted that the basis for this allegation was Wells Fargo's violation of California Civil Code section 2923.5 for failure to disclose foreclosure alternatives. Section 2923.5's statutory notice requirement imposes a state law mandate about what information must be given to borrowers, and includes a strict time frame for doing so.[8] As this court previously held in dismissing Plaintiffs' original complaint, Plaintiffs' Section 2923.5 claim "affect[s] disclosure and processing, origination, servicing, sale or purchase of a mortgage and [is] specifically preempted by HOLA. *Tuck*, 2012 WL 2906738, at *4 (citations and quotation marks omitted); *see also Sato*, 2011 WL 2784567, at *6 ("the overwhelming weight of authority has held that a claim under section 2923.5 is preempted by HOLA") (citations and quotation marks omitted). Accordingly, as Plaintiffs' claims are based not on an affirmative, material misrepresentation of fact to Plaintiffs, but instead on Wells Fargo's failure to disclose alternatives to foreclosure, they are preempted and must be dismissed.[9] *See Stefan v. Wachovia*, No. C 09-2252 SBA, 2009 WL 4730904, at *3 (N.D. Cal. Dec. 7, 2009) (not reported in F. Supp. 2d) (dismissing as preempted fraud claim attacking bank's initiation of foreclosure process); *Loder*, 2011 WL 1884733, at *6 (dismissing as preempted elder abuse claim that "attack[ed] the terms of credit, including . . . adjustments to the interest rate, . . . payments due, . . . or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan") (internal quotation marks omitted); *Remo*, 2011 WL 3448234, at *4-5 (dismissing as preempted intentional infliction of emotional distress claim based upon a challenge to the means by which plaintiff's loan originated); *Sami v. Wells Fargo*, No. 12-00108 DMR, 2012 WL 967051, at *10 (N.D. Cal. Mar. 21, 2012) (dismissing as

---

[8] The statute requires a mortgage lender to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). A notice of default cannot be filed until 30 days after this contact is made. Cal. Civ. Code § 2923.5(a)(1).

[9] As the court dismisses Plaintiffs' claims on the grounds of HOLA preemption, it does not reach Wells Fargo's remaining arguments supporting its motion to dismiss.

11

preempted unfair business practices claim based upon challenge to mortgage processing procedures).

### III. Preliminary Injunction

The standard for issuing a preliminary injunction is well established, and mirrors that for a temporary restraining order. *Stuhlberg Int'l Sales Co., Inc. v. John D. Brush & Co.*, *Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). An application for preliminary relief requires Plaintiffs to "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Id*. at 21-22. In the Ninth Circuit, courts evaluate these factors on a sliding scale; a court may issue a preliminary injunction on less than a likelihood of success on the merits, if Plaintiffs demonstrate "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

As this court previously found, the question of irreparable harm and the balance of hardships weigh in favor of Plaintiffs. *See Osorio v. Wells Fargo Bank*, No. C 12-02645 RS, 2012 WL 1909335, at *3 (N.D. Cal. May 24, 2012) (as many courts have recognized, "losing one's home though foreclosure constitutes irreparable harm," and "[d]efendants' monetary loss . . . does not outweigh the harm plaintiff would suffer if he lost his home, especially considering that any security defendants have in plaintiff's property will still remain."). However, as discussed above, the court concludes that Plaintiffs have failed to state a claim. Therefore, Plaintiffs have not met their burden of showing either a likelihood of success on the merits or serious questions going to the merits of their claims. Accordingly, Plaintiffs' request for a preliminary injunction is DENIED.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted and Plaintiffs' Complaint is dismissed with prejudice. Plaintiffs' request for a preliminary injunction is denied.

IT IS SO ORDERED.

Dated: December 4, 2012



_____
DONNA M. RYU
United States Magistrate Judge